IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable R. Brooke Jackson

Civil Action No.  09-cv-02934-RBJ-BNB

AMERICAN COMPENSATION INSURANCE
COMPANY

      Plaintiff,

v.

MTD PRODUCTS, INC.

      Defendant.

---

## ORDER GRANTING SUMMARY JUDGMENT

---

This products liability case was filed in state court on November 2, 2009 and removed to this Court on diversity of citizenship grounds shortly thereafter.  The case is set for an eight day jury trial beginning April 9, 2012.  Several motions have been fully briefed.  Because the Court agrees with the defendant that plaintiff's claims are barred by the statute of limitations, it does not reach or decide the other pending motions other than to find that they are moot.

**Standard of Review**

Summary judgment may be granted only if the moving party shows that there is no genuine dispute as to any material fact, and that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).

**General Facts**

On October 17, 2007 Bernardo Baltierrez, an employee in a Big O Tires store in Frisco, Colorado, was injured while inflating a tire on a "snow thrower," sometimes referred to in documents and briefs as a "snow blower," when the plastic rim holding the tire exploded.  Big O

Tire's worker's compensation carrier, American Compensation Insurance Company (referred to hereafter either as "plaintiff" or as "ACIC"), ultimately settled Mr. Baltierrez' claim for $284,000. It seeks to recoup its loss against the manufacturer of the snow thrower, MTD Products, Inc. ("MTD"), on claims asserting (1) negligence, (2) strict liability, and (3) breaches of the implied and express warranties of merchantability.

**Additional Facts Pertinent to the Statute of Limitations**

The Court finds, based upon the parties' briefs and exhibits, that the following facts are not disputed:

1.  On June 1, 2006 Mark Daniels, Manager, Recovery Services for RTW, Inc. ("RTW"), sent a notice to the Legal Department of MTD advising that it was processing a worker's compensation claim of an individual named Robert Lucas. Ex. A to defendant's motion, CM/ECF docket #36-1. I will hereafter refer to the parties' exhibits by the court's docket number.

2.  RTW is the parent company of ACIC. Daniels deposition in the present case [#36-2], at 11. ACIC is one of two insurance subsidiaries of RTW. *Id.* at 16.

3.  The notice reports that Mr. Lucas was injured in an accident on March 24, 2006 while he was repairing an MTD snow thrower. Mr. Daniels stated that the composite plastic wheel rim shattered with the application of air pressure, and "[i]t appears that negligent and insufficient design of these wheels was the cause of this loss." He informed MTD that RTW would exercise its right of subrogation for the medical and/or wage loss benefits it provides to Mr. Lucas. [#36-1].

4.  The incident involving Mr. Baltierrez occurred on October 17, 2002. On the same day his store manager completed an "Employer's First Report of Injury" form. [#34-

4].  The form indicates that while Mr. Baltierrez was inflating a small tire, the "tire

blew up," and "rubber from tire/plastic from wheel" injured him.

5.  ACIC received notice of the Baltierrez incident and his claim on the same day.

Daniels depo.  [#36-2] at 103.

6.  Mr. Daniels confirmed in his deposition in this case that on October 17, 2007 he was

aware that the Lucas incident involved a wheel of a snow thrower that appeared to be

made of a plastic type material and that exploded while the tire was being inflated.

[#36-2] at 110-11.

7.  The snow thrower involved in the present case was manufactured by MTD through its

subsidiaries.  Martens Aff. [#36-3] ¶5.  It is the same model of snow thrower as that

which was involved in the Lucas incident.  *Compare* Martens Aff. at ¶4 *to* Daniels

letter of June 1, 2006 [#36-1].

8.  On October 18, 2007 Scott Smith, an RTW employee who was acting as a claims

adjustor on this claim, assigned Global Options, an independent investigations firm,

to investigate the incident.  Daniels depo. [#36-2] at 13-14, 105, 116.  Smith's file

note states, "[c]laimant was filling tire and it exploded in his face, causing serious

head/brain injury." *Id.* at 116.

9.  On October 19, 2007 Michael Testa, a Loss Prevention Consultant for RTW, sent an

email to a number of RTW or ACIC employees, including Scott Smith, providing

information about Mr. Baltierrez and the incident.  [#36-5].  This email states, among

other things: "I will be curious is [sic] the Consumer Product Safety Commission has

any recalls or problems with inferior quality snow blower tire wheels.  On the other

hand, it is unknown if Baltierrez was monitoring the air pressure as he was filling up

the snow blower tire, or if his concentration was with making sure the tire was being

seated properly on the wheel, and he perhaps over inflated the tire and the high

pressure causing failure of the wheel.  Other unknowns – where was the snow blower

was [sic] stored.  If it had been left in a cold environment, perhaps the cold would

have made the wheel brittle.  There are a number of factors such as cold, low

humidity winters in Colorado that could affect components of hard plastics.  Other

factors that affect the quality of plastics in Colorado include UV and heat."

10. Sharon Coburn was the investigator assigned by Global Options to do the

investigation.  Daniels depo. [#36-2] at 120.

11. On October 21, 2007 Ms. Coburn sent an email to Mr. Smith which she described as

a "quick update," adding that "Global Options" would provide a further update.

Claims Abstract [#36-6] at Bates #1200.  She stated, among other things, that "[t]he

wheel was from a snow blower tire and it appeared the interior portion of the tire,

which was plastic, blew from the tire and hit the claimant in the face."  *Id.* at Bates

#1201.  She added that the store manager, Chris, and a co-worker, Jesus Ochoa, had

never seen the interior of a snow blower tire made of plastic.

12. In another email on October 21, 2007 Ms. Coburn advised Mr. Smith that she had

obtained the instructions of the manufacturer of the machine used to inflate tires at the

Big O store.  She also provided information regarding the training that tire

technicians, including Mr. Baltierrez, received on filling snow blower tires and the

frequency of their filling snow blower tires.  [#36-4] at Bates #1201.

13. On October 22, 2007 Global Options provided Mr. Smith with a further update by

email.  This included these statements: "The wheel was from a snow blower tire and

it appeared the interior portion of the tire, which was plastic, blew from the tire and hit the claimant in the face.  Chris stated he has never seen the interior of a snow tire to be made of plastic.  Jesus, who was also a tire technician, stated that he fills snow tires with air about once a week but has never seen one with the interior made of plastic.  He stated they are usually made of metal."  *Id.* at Bates #1202.

14. On October 24, 2007 Ms. Coburn advised Mr. Smith by email that she had spoken with Mr. Daniels that morning.  She states that "we" would be sending him the tires and parts, and that he should receive them soon.  She added that her report and cassettes of her interviews were sent to Global, and Global should be sending them to Mr. Smith soon.  [#36-6] at Bates #1202.

15. On October 24, 2007 Mr. Daniels sent a fax to MTD's outside counsel concerning the Lucas case.  [#36-8].  Expressing frustration that RTW's claim against MTD had not yet been settled, he reminds the lawyer that the composite wheels of the specific model of snow thrower involved in the Lucas incident had been recalled.  He threatened to sue if MTD does not settle the claim.  The fax continues with the following paragraph:

"Oh, and by the way, one of our insured employee's [sic] just recently had another similar situation in CO.  I do need to get all the facts, but it's a composite wheel, gray in color, from a snow thrower, and this resulting explosion caused the employee to endure a frontal craniectomy, resulting in a rather large titanium plate being fashioned into a forehead for him.  If it's one of MTD's, which I think it is, then this $500.00 claim [referring to the Lucas claim] is going to be mere soda change as compared with the next one."

16. The Colorado incident to which Mr. Daniels referred in his fax to MTD's counsel was the Baltierrez incident.  Daniels depo. [#36-2] at 67.

17. On or after October 31, 2007 ACIC received Global Options' report dated October 31, 2007 on the investigation to Mr. Smith.  [cover letter and report are collectively #37-2].  The report, excluding photographs, is approximately five and one-half pages in length.  It includes concerning the accident:

- A customer brought in two small snow blower tires, with a maximum of 30 PSI printed on the side, manufactured by "Shredder" that had deflated over the summer and requested that they be inflated.

- According to the store manager, Chris Barbour, Big-O Tires commonly repairs tires of all kinds, but plastic-wheeled or rimmed tires such as the one involved in Mr. Baltierrez' accident are rare compared to steel-wheeled tires.

- The machine used to inflate tires was identified as a Coats 40550A Tire Machine, number manufactured by The Coats Company.  The label on the machine displayed Tire Changer Coats 8028717, but the label was covered by grime and was barely readable.  Mr. Barbour stated that there had been no history of mechanical trouble with the machine and provided information about the servicing and lubrication of the machine as needed.

- Mr. Barbour described the process for filling this type of small tire.

- He stated that he had never seen or heard of an accident of this magnitude but that plastic wheels/rims are rarely seen at this store.

- He confirmed that Mr. Baltierrez was a good employee who had been employed there for three months, had received "tire-tech" training, both

corporate and on-the-job.  He could not say whether Mr. Baltierrez was wearing protective eyewear, as he should have been, when the incident occurred.

- "When asked what his thoughts and/or theories were on the cause of this accident, Mr. Barbour state there are only two scenarios that he could imagine.  First, is that perhaps a crack or imperfection existed in the plastic wheel of the snow-blower tire and the second is that the tire may have been over-inflated by the subject.  (Note: a combination of the above theories is possible as well)."  [#37-2] at Bates #2191.

- A co-worker, Jesus Ochoa, reported that the tire machine has a pressure gauge to indicate how many pounds of air pressure are in a tire, but there is no safety mechanism to prevent over-inflation.

- Parenthetically, the report states that it seemed odd to the investigator that the tire machine was manufactured with a foot pedal for inserting air at one end of the machine and the pressure gauge at the opposite end.  According to Mr. Ochoa, Mr. Baltierrez was having difficulty inflating the tire, and another unidentified employee told him to use a common process of removing the "core" from the "ball stem" and reinsert the core after inflation.

- Mr. Ochoa said tires of the same size were worked on about once a week, but he had never seen one with a plastic wheel.  He has seen tires become over-inflated, but they just pop out over the wheel and the air escapes.  In this case, however, the wheel was plastic and it exploded under the pressure.  The

7

numerous pieces of the exploded wheel and its tire along with the second

wheel were collected by the investigator.

- The October 31, 2007 report does not mention MTD.

**Statute of Limitations**

1. <u>Statute Applicable to Claims One and Two</u>.

The period of limitation applicable to the First and Second Claims (products liability –

negligence and products liability – strict liability) is set forth at C.R.S. § 13-80-106:

> **Limitation of actions against manufacturers or sellers of products**.  (1)
> Notwithstanding any other statutory provisions to the contrary, all actions except
> those governed by section 4-2-725 [breach of warranty], brought against a
> manufacturer or seller of a product, regardless of the substantive legal theory or
> theories on which the action is brought, for or on account of personal injury, death
> or property damage caused by or resulting from the manufacture, construction,
> design, formula, installation, preparation, assembly, testing, packaging, labeling,
> or sale of any product, or the failure to warn or protect against a danger or hazard
> in the use, misuse, or unintended use of any product *shall be brought within two
> years after the claim for relief arises and not thereafter.*

(italicized emphasis added)

Colorado appellate courts hold that a claim for relief arises under this statute "on the date

both the injury and its cause are known or should have been known by the exercise of reasonable

diligence."  C.R.S. § 13-80-108(1)(concerning when a cause of action accrues).  *See, e.g., Miller

v. Armstrong World Industries, Inc.,* 817 P.2d 111, 113 (Colo. 1991); *Salazar v. American

Sterilizer Co.,* 5 P.3d 357, 363 (Colo. App. 2000).  "A claim for relief does not accrue until the

plaintiff knows, or should know, in the exercise of reasonable diligence, all material facts

essential to show the elements of that cause of action."  *Miller,* 817 P.2d at 113.  The claim arises

when " the claimant has knowledge of facts which would put a reasonable person on notice of

the nature and extent of an injury and that the injury was caused by the wrongful conduct of

another."  *Salazar,* 5 P. 3d at 363.

2.   <u>Statute Applicable to Claim Three</u>

C.R.S. 13-80-106 carves out an exception for warranty actions governed by C.R.S. § 4-2-725.  That statute incorporates the three-year period prescribed in section 13-80-101 and provides that the cause of action accrues when tender of delivery is made.  C.R.S. § 4-2-725(1), (2).

**Conclusions**

ACIC's complaint in this case was filed on November 2, 2009.  Because October 31, 2009 was a Saturday, the claim was timely filed if it arose on or after October 31, 2007.  If the claim arose before October 31, 2007, it is barred by the statute of limitations.

In their briefs the parties in substance treat RTW and ACIC interchangeably.  I agree. Although ACIC is a separate corporate entity, it functions as one of the two workers compensation insurance arms of its parent holding company.  RTW employees acted on behalf of ACIC in matters pertaining to the Baltierrez claim.

The undisputed facts show that RTW acted immediately and with substantial diligence in investigating the accident.  By the day after the accident, October 18, 2007, the individual assigned to act as RTW's claims adjuster on the claim, Scott Smith, knew that Mr. Baltierrez had sustained a "serious head/brain injury" when a tire he was filling on the previous day "exploded in his face."  As reflected in the October 19, 2007 email of Michael Testa, RTW's Loss Prevention Consultant, it wasn't yet known whether the cause of the explosion was a product defect, user error or something else.  By October 21, 2007 an outside investigator, Sharon Coburn, was reporting to Mr. Smith that the wheel involved was from a snow blower, and that it appeared that the interior portion of the wheel, which was plastic, had blown from the tire and hit Mr. Baltierrez in the face.

Ms. Coburn discussed the incident with Mark Daniels, RTW's "Manager, Recovery Services," on the morning of October 24, 2007.  Mr. Daniels had prior experience with a similar incident involving claimant Robert Lucas.  According to a notice that Mr. Daniels had sent to MTD's legal department on June 1, 2006, Mr. Lucas had been injured in an accident on March 24, 2006 when a composite plastic wheel rim of an MTD snow thrower shattered with the application of tire pressure.  Mr. Daniels expressed the opinion in the June 1, 2006 notice that "it appears that negligent and insufficient design of these wheels was the cause of this loss."  He informed MTD's legal department at that time that RTW would exercise its right of subrogation.

On October 24, 2007 Mr. Daniels was frustrated that MTD still had done nothing to settle the Lucas claim.  After talking to Ms. Coburn about the Baltierrez accident, he sent a fax to MTD's outside counsel expressing that frustration and threatening to sue.  His fax then informed MTD's counsel that a similar situation involving a composite wheel of a snow thrower that exploded and caused an injury (the Baltierrez incident) had recently occurred in Colorado.  He reported that he thought that the snow thrower was MTD's, and if so, RTW's claim against MTD from the Baltierrez accident would be much greater that its claim from the Lucas accident.

In short, by October 24, 2007 a management level employee of RTW who dealt with subrogation claims, Mr. Daniels, was aware of the nature and scope of Mr. Baltierrez' injury.  He knew that it resulted when a composite or plastic inner wheel on a snow thrower had exploded while the tire was being inflated.  It cannot be said that he knew the cause with 100% certainty.  Even a jury verdict for ACIC on the merits would only determine the cause to a preponderance of the evidence.  However, on October 24, 2007 Mr. Daniels believed that the injury was caused by the misconduct of another, and even more specifically, negligent or insufficient design of the wheel.  Although knowledge of the specific manufacturer is not necessary for statute of

limitations purposes, *see Yoder v. Honeywell, Inc.,* 900 F.Supp. 240, 248 (D.Colo. 1995), *aff'd* 104 F.3d 1215 (10th Cir. 1997), *cert denied,* 522 U.S. 812 (1997), Mr. Daniels believed that the wheel was MTD's and that the claim, therefore, would be against MTD.  He even warned MTD's counsel that the claim would make the Lucas claim look like "soda change."

ACIC does not suggest that Mr. Daniels' knowledge is not attributable to or that it does not bind ACIC.  Rather, ACIC makes several arguments as to why the claim did not arise on October 24, 2007.

ACIC argues that the claim did not arise at least until October 31, 2007 when RTW received Global Options' report.  "The only reasonable and permissible inference favorable to Plaintiff ACIC is that the October 31, 2007 report contained the facts necessary for Mr. Daniels to utilize the additional information from the Lucas case to identify that a defect in the tire rim caused the explosion in Colorado."  Plaintiff's Response at 7.  I disagree.  The October 31, 2007 report did not provide any significant information about the cause of the accident beyond that which RTW had already received from earlier communications.  It provided more detail about the machine Mr. Baltierrez was using and the technique by which small snow thrower wheels are inflated.  It provided the store manager's theories as to what might have caused the accident. However, the investigators did not provide their own thoughts as to causation.  Mr. Daniels already had more knowledge about the cause of an accident of this nature than anything provided by the Global Options report.  Because of his prior experience, he had already determined that a products liability claim was likely and that it probably would be against MTD.  Mr. Daniels does not believe that he even saw the Global Options report on October 31, 2007.  Daniels depo. [#36-2] at 157-58.

ACIC argues that "suspicion of a possible connection does not necessarily put a reasonable person on notice of the nature, extent, and cause of an injury." *Salazar,* 5 P.3d at 363. The court said that in the context of rejecting "inquiry notice," whereunder a statute of limitations begins to run when a person becomes aware of facts that would prompt a reasonable person to begin seeking information as to the problem and its cause. In any event, the undisputed facts here show that Mr. Daniels had more than a mere suspicion on October 24, 2007. He had enough facts to advise MTD's counsel that the Baltierrez accident was similar to the Lucas accident, which he attributed to negligent or insufficient design; that ACIC's claim would be significantly greater than in the Lucas case; and that he believed the claim would be against MTD.

ACIC argues that Mr. Daniels did not have knowledge of facts that establish each of the elements of a products liability claim under Colorado law. As indicated above, if that meant that the facts or the liability had to have been established with absolute certainty, then a statute of limitations defense could never be established without a trial on the merits, and even then a verdict would only mean that a jury found the elements to have been established as more likely than not. Nor is it necessary that the plaintiff know the precise legal theory upon which the action may be brought. *Salazar,* 5 P.3d at 363; *Winkler v. Rocky Mountain Conference of United Methodist Church,* 923 P.2d 152, 159 (Colo. App. 1995). In this case, however, Mr. Daniels actually had formed opinions by October 24, 2007 not only about the facts but about the legal theories and even the identity of the wrongdoer.

Alternatively, noting that as subrogee it steps into its insured's shoes and acquires his rights, ACIC points to Mr. Baltierrez' deposition testimony given on April 11, 2011 [#37-5] that even by then he had not heard of MTD and did not know what caused the wheel to burst. *Id.* at

5, 142.  That argument proves too much.  If it is followed to its logical conclusion, ACIC's claim had not arisen by April 11, 2011 (some 15 months after ACIC filed this lawsuit) and might never arise.  The nature of an injury might be such that an insured could never learn, whatever his degree of diligence, what caused an injury.  Perhaps recognizing the problem, ACIC suggests that Mr. Baltierrez perhaps should be deemed to have known the cause of his injury on November 18, 2009 "when Plaintiff ACIC placed Mr. Baltierrez on notice that it had a potential subrogation claim when it filed its Notice with the Colorado Division of Workers' Compensation," or on September 29, 2010, "when the report was provided to Mr. Baltierrez' attorney of record."  *Id.* at 14.  Both of those dates also fall after ACIC asserted in this suit the very claims that it suggests had not yet arisen.  Courts have rejected arguments that an insurer's subrogation claim does not arise for statute of limitations purposes until the insurer pays the insured, holding in that context that the claim arises when the insured's claim arises.  *See, e.g., Union Ins. Co. v. RCA Corp.,* 724 P.2d 80, 82 (Colo. App. 1986).  It does not follow that the insurer's claim does not arise even though the insurer has discovered both the injury and its cause.

As another alterative, ACIC argues that claim did not arise until it admitted liability to Mr. Baltierrez for workers' compensation benefits and thereby suffered an "injury."  However, courts, including the Colorado Court of Appeals, have rejected insurers' arguments that their claim against a third-party tortfeasor does not arise until the insurer pays the insured.  *E.g., Union Ins. Co.,* 724 P.2d at 82.  That court in turn cited 91 A.L.R. 3d 844, 850 which states,

> While a subrogated insurer frequently contends that its action against the third-
> party tort feasor who allegedly caused the damage or injury for which the insurer
> had to recompense its insured did not accrue, and the statute of limitations did not

begin to run thereon, until the insurer had made the payments required under its insurance contract, courts have held generally that such a contention was without merit.

ACIC attempts to distinguish such authorities on the basis that its claim against MTD is not merely a subrogation claim but is a claim created by statute.  ACIC cannot explain, however, how that distinction makes a difference.  In any event, it is evident from the undisputed facts that at least by October 24, 2007 Mr. Daniels understood that ACIC was likely liable to Mr. Baltierrez for workers compensation benefits and would be pursuing a products liability claim against the manufacturer.

The Court concludes, based upon undisputed facts, that ACIC knew of the injury and its cause within the meaning of Colorado law by October 24, 2007.  Therefore, ACIC's First Claim (products liability, negligence) and Second Claim (strict products liability) are barred by the statute of limitations.  ACIC did not respond to MTD's arguments regarding the running of the statute of limitations applicable to ACIC's Third Claim (breach of warranty).  The Court therefore deems the motion to have been confessed as to that claim.

**ORDER**

1. Defendant MTD Products, Inc.'s Motion for Summary Judgment, docket #36, is GRANTED.

2. Pending motions 55, 56, 57, 58, 60, 91 and 95 are thereby rendered MOOT.

3. The Court directs that judgment be entered in favor of the defendant, MTD Products, Inc., and against the plaintiff, American Compensation Insurance Company, dismissing this civil action and all claims therein with prejudice.  Defendant is awarded its reasonable costs.

DATED this 15th day of February, 2012.

BY THE COURT:

_____

R. Brooke Jackson
United States District Judge